Filed 1/29/16  P. v. Simon CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B258672 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA130460) |
| v. | |
| HERBERT LEE SIMON, SR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Allen Joseph Webster, Jr., Judge.  Affirmed.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson, Deputy Attorney General, Chung L. Mar, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury convicted appellant Herbert Lee Simon of one count of corporal injury to a spouse or cohabitant, in violation of Penal Code section 273.5,[1] and one count of attempting to dissuade a witness, in violation of section 136.1, subdivision (a)(2), plus enhancements. On appeal, Simon contends that, pursuant to *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*), the trial court erred by denying his challenges to the racial composition of the jury. We disagree and affirm.

## FACTS AND PROCEEDINGS BELOW

Because the issue Simon raises on appeal pertains only to the jury selection process, we relate the facts of the case only briefly. On October 15, 2013, Simon stabbed his girlfriend with a knife. The police officers who detained him observed him to behave erratically, and he told a nurse at the police station that he had taken PCP and cocaine before the incident. As the case neared trial, jail officials recorded phone calls in which Simon told his girlfriend not to come to court to testify, and that if she did come to court, she should testify that she could not remember what happened or who stabbed her.

An information filed January 2, 2014, as amended on April 3, 2014, charged Simon with one count of attempted murder, in violation of sections 664 and 187, subdivision (a), one count of attempting to dissuade a witness, in violation of section 136.1, subdivision (a)(2), and one count of corporal injury to a spouse or cohabitant, in violation of section 273.5, subdivision (a).

During jury selection, the prosecution used peremptory challenges to remove two African-American men from the jury pool. In each case, Simon objected, contending that the prosecutor's action constituted purposeful discrimination on the basis of race. Simon himself is African-American. In each case, the trial court found that Simon had established a prima facie case of racial discrimination, but that the peremptory challenge

---

[1] Subsequent statutory references are to the Penal Code unless otherwise specified.

could stand because the prosecution had articulated a race-neutral explanation for the challenge.

A. *Prospective Juror No. 9*

Prospective Juror No. 9 was an African-American man from Gardena who was married with four children, and had retired from a job at California State University at Long Beach. He had previously served on four juries, all of which reached verdicts. During voir dire, he stated, "I don't think mental illness should be a pass for someone committing a crime." He also stated that if there were an insanity plea at issue in a case, he would hope to have prior medical documentation of the defendant's mental condition. Prospective Juror No. 9 stated that he had once been falsely accused of domestic violence, but believed that there were real instances of domestic violence. He also stated that nothing in his history would prevent him from voting to convict a defendant of a domestic violence offense if the prosecution proved its case.

Simon's counsel objected to the use of the peremptory challenge, noting that there was only one African-American remaining on the panel, and contending that Prospective Juror No. 9 had made no statements indicating that he would be biased against the prosecution. The trial court found that the defense had established a prima facie case of discrimination, and asked the prosecution to provide a race-neutral justification. The prosecutor explained that he believed that anyone who had previously been falsely accused of domestic violence would be biased in favor of the defense. He also stated that he did not have a good rapport with Prospective Juror No. 9, and that the juror had closed his eyes a lot. The trial court found the prosecutor's explanation sufficient and denied Simon's motion.

B. *Prospective Juror No. 5*

Prospective Juror No. 5 was a retired African-American man who lived with his wife in West Los Angeles and had previously worked in the aerospace industry. He had served on a jury once before, in a murder case.

During voir dire, Prospective Juror No. 5 said that neither he nor his family had been victims of a crime or worked in law enforcement, nor did they have a history of mental illness. He agreed that he would entertain mental illness as a defense if it had been medically diagnosed. Prospective Juror No. 5 correctly answered questions regarding the burden of proof, and in response to hypothetical questions, said that he would vote to convict a guilty defendant in spite of pleas from the defendant's mother.

Simon's counsel objected to this peremptory challenge on the ground that Prospective Juror No. 5 had shown no signs of bias against the prosecution. The trial court found that Simon had established a prima facie case of discrimination and asked the prosecution for an explanation. The prosecutor explained that Prospective Juror No. 5 had a strong personality, and that there were already several other such people on the panel. In addition, Prospective Juror No. 5 had displayed body language that the prosecutor described as "rude." Furthermore, Prospective Juror No. 5 had been unwilling to engage with questions from the prosecutor and the court beyond tersely saying "'no,'" but nodded and smiled when Simon's counsel was talking. The prosecutor pointed out that there were three African-Americans on the panel, and that he had accepted the panel as then constituted.

The trial court found that the prosecution's answers, although subjective, were race-neutral, and accordingly denied the defense motion.

After the trial, the jury found Simon guilty of attempting to dissuade a witness and corporal injury to a spouse or cohabitant, and not guilty of attempted murder. The court sentenced Simon to 19 years 4 months in prison, as follows: For corporal injury to a spouse or cohabitant, the low term of two years, doubled to four years pursuant to section 1170.12, subdivision (c) because Simon had previously been convicted of a strike offense; for attempting to dissuade a witness, a consecutive sentence of one-third the midterm, or eight months, doubled to 16 months pursuant to section 1170.12; a three-year enhancement pursuant to section 12022.7, subdivision (e) because the jury found that he had inflicted great bodily injury while committing a crime involving domestic violence; a one-year enhancement pursuant to section 12022, subdivision (b)(1)

4

because the jury found that he had used a deadly or dangerous weapon in commission of a felony; and two 5-year enhancements for prior serious felonies pursuant to section 667, subdivision (a).

## DISCUSSION

"It is well settled that '[a] prosecutor's use of peremptory challenges to strike prospective jurors on the basis of group bias—that is, bias against "members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds"—violates the right of a criminal defendant to trial by a jury drawn from a representative cross-section of the community under article I, section 16 of the California Constitution. (*Wheeler*, *supra*, 22 Cal.3d at pp. 276–277; see *People v. Griffin* (2004) 33 Cal.4th 536, 553 . . . .) Such a practice also violates the defendant's right to equal protection under the Fourteenth Amendment to the United States Constitution. (*Batson*, *supra*, 476 U.S. at p. 88; see also *People v. Cleveland* (2004) 32 Cal.4th 704, 732.)' (*People v. Avila* (2006) 38 Cal.4th 491, 541 . . . .)

"The United States Supreme Court . . . reaffirmed the procedure and standard to be used by trial courts when *Batson* motions challenging peremptory strikes are made. ""'First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question[; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.'" [Citation.]' (*Snyder v. Louisiana* (2008) 552 U.S. 472, 476-477 . . . .)" (*People v. Hamilton* (2009) 45 Cal.4th 863, 898.)

In this case, the trial court found that Simon had made a prima facie case of a race-based decision with respect to both prospective jurors, and required the prosecution to offer race-neutral justifications. Simon contends that the court erred in each case at the third step of the analysis, when it found that Simon had failed to demonstrate that the prosecution engaged in purposeful discrimination.

5

We review the trial court's finding regarding the existence of purposeful racial discrimination under the substantial evidence standard. (*People v. Hamilton*, *supra*, 45 Cal.4th at p. 900.) We accord great deference to the trial court, so long as "the trial court has made a sincere and reasoned attempt to evaluate each stated reason as applied to each challenged juror. [Citations.] When the prosecutor's stated reasons are both inherently plausible and supported by the record, the trial court need not question the prosecutor or make detailed findings. But when the prosecutor's stated reasons are either unsupported by the record, inherently implausible, or both, more is required of the trial court than a global finding that the reasons appear sufficient." (*People v. Silva* (2001) 25 Cal.4th 345, 386.)

In this case, the prosecutor's explanations for dismissing both jurors are inherently plausible and supported by the record. The record shows that Prospective Juror No. 9 stated he had once been falsely accused of domestic violence. Although this prospective juror also said that this experience would not make him hesitant to vote to convict a defendant of a domestic violence offense, a prosecutor might plausibly worry that this juror would be biased in favor of the defense. As to Prospective Juror No. 5, the record supports the prosecutor's claim that the juror provided short, monosyllabic answers to most questions. The prosecutor's other reasons for excusing Prospective Juror No. 5— his body language and "strong personalit[y]"— by their nature cannot be discerned in a reporter's transcript, but the trial court was in a position to witness and evaluate them.

In exercising a peremptory challenge, a prosecutor's explanation "'need not rise to the level justifying exercise of a challenge for cause[,]'" and may be based on no more than "'"'hunches'. . . so long as the reasons are not based on impermissible group bias.'"'" (*People v. Hamilton*, *supra*, 45 Cal.4th at p. 901.) The prosecutor's reasons for excusing Prospective Juror No. 5 did not rise far above the level of hunches, but they were plausible and race neutral. Body language and the manner of answering questions are permissible race-neutral justifications for exercising a peremptory challenge, and the inability to judge such matters on a cold record is "'one reason why appellate courts in

6

this area of law generally give great deference to the trial court, which saw and heard the entire voir dire proceedings.'" (*People v. Reynoso* (2003) 31 Cal.4th 903, 917-918.)

We conclude that substantial evidence supported the trial court's finding that the prosecution did not engage in purposeful racial discrimination in exercising peremptory challenges to Prospective Jurors No. 5 and No. 9.  Simon's challenge of the trial court's rejection of his *Batson*/*Wheeler* motion fails.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


LUI, J.

7